Your Honor, I'd probably like to preserve about four minutes for rebuttal. All right. You may proceed. Okay. Thank you, Your Honor. It's a pleasure to appear before you. So this is a case of a California state prisoner involving deliberate indifference to his serious mental health needs. Specifically, for over 15 years, Mr. Villery has been diagnosed with post-traumatic stress disorder arising from events of significant violence that occurred in the prison environment. Specifically, there's a preliminary injunction appeal, and it presents three questions. First and most important, I believe, is did the district court apply an incorrect standard when Villery sought to modify the preliminary injunction by affording deference to prison officials' decisions regarding Mr. Villery's PTSD treatment? Specifically, in the district court, Mr. Villery sought single-cell status or single-cell housing to address his PTSD symptoms. This was a medically necessary aspect of his treatment. However, when addressing his needs, prison officials failed to truly take his issues seriously. They failed to adequately consider… Counsel, how do we know that the officials did not take your case seriously? They held a hearing. They reviewed the affidavits of two officials who said they read the McCall report and said… Yes. …and then had obtained additional updating from other prison mental health officials who said that they did not believe that you qualified for single-cell. So that seems to be… So… Well, no, it's not that the court ignored it. What it is is that the evidence itself was irrelevant to Mr. Villery's need for single-cell status, and that goes with the question of the inappropriate or erroneous application of deference to prison officials' decisions. As this court has recently held, actually, in Fierro v. Smith, that deference should not be applied to cases where prison officials do not establish a plausible connection to security needs. So, Mr. Villery, there's kind of – I think you're right. You're very good about being alone. You have two issues here. You've got the deference issue, right? And then you have the issue, I think, that Judge Bivey was getting at as to – so we can address both. On the deference issue, it's hard – so in one sense, you could characterize there is not needing to be deference because this doesn't have to do with security because – and this is how you characterize it – which is that if you were to put me in a single cell, that would not cause any safety or security problems. And that's true. If the prison was to give you 100 acres to roam freely in, that too – I'm assuming that it had a fence around it or something – would not cause any security problems. But I don't think that can be the right way we analyze it. There's no question that your argument is – it's your argument to us and to them – is that if I don't give – if I don't get a single cell, I will be a security risk and a safety risk to both myself – I will injure myself – and or I will injure others. So there is a heavy safety-security component wrapped up in the analysis that the prison has to do here. That is – it's trying to decide whether or not you need a single cell in order to accommodate those safety and security concerns. And it can't be true that the mere fact that if they choose B instead of A – that is, a single cell instead of a double cell – that that little decision itself wouldn't create a safety or security harm. There is a safety and security concern. I mean your whole argument, it seems to me, is a safety and security argument. And so I found it very odd that you would say this doesn't have anything to do with safety and security. You can only do that by isolating and saying, well, if they choose the option I want, that won't itself give a greater safety and security. But that will always be true. You say if they let me have a whole wing to myself, that wouldn't cause me a safety and security problem. Right, but in evaluating whether they should do that, they have to decide whether your safety and security concerns are such that they merit you getting the whole wing to yourself. You see what I'm saying? The analysis – I don't know how you get away from safety and security in your case. Well, because in this court's line of cases on deference, beginning with CHESS, this court specifically held that their specific decision – there has to be a conflict between security needs and the medical treatment decision that was made. So the normal case – oftentimes there's not a conflict because the normal case for either mental health or even physical illness treatment involves somebody – like I'm trying to decide whether or not somebody should be treated for some medical illness. And it doesn't involve any sort of safety and security concerns. And so your typical sort of – our Eighth Amendment medical indifference type case would often not involve that. But here, where you're saying – you're specifically saying I need this accommodation because I am a threat to myself and others. That – to the extent that it's a rare case, this would certainly be that rare case where there's a heavy overlap between your indifference claim and safety and security concerns it seems like. Well, I understand the court's perspective, and you are correct. There is a safety and security as far as mine and other prisoners' safety and living with me and stuff like that. However, there has to be a plausible connection between safety and – like essentially that my single-cell need would conflict with other safety and security concerns of the prison. And, in fact, their decision-making process shows that there was no plausible connection specifically because in – for the 15 years or so or the last seven or eight years that my issues have been described to them, they've completely failed and refused to investigate any evidence having to do with in-cell violence, in-cell altercations. It's similar to Konstant versus Nostalga. Nostalga, I believe – Bilama, I'm sorry. So, Mr. Bilama, you say that. You say that, and I looked at – it's hard for me. The prison here – you have been asking for this and asking for this, and the prison said no, and the district court said no. You've got to take a closer look at this. You really got to take a – and they took a closer look at it, and they said no. And what this really comes down to is you're saying for safety and security reasons I need this special accommodation, and they're saying no. A, it's not clear to me how we cannot defer to them because this is very – and, B, you want us to just basically say that the agency's balancing of all this is wrong? I mean you're saying they – you're saying not just that they're not balancing. You're saying they're not taking that into consideration at all. Boy, that's really hard to believe. Like they had a meeting about this, and after the court told them, they had to take a close look. Absolutely, but they continued. The court found troubling. They repeatedly continued to refuse to acknowledge my history of in-cell violence and in-cell conflict. They completely ignored it. And, in fact, they relied on documentation in the record that they – essentially it was like a feedback loop. So if the court thought they ignored it, counsel, if the court thought they ignored it, I didn't read the court as thinking they ignored it. I read the court. The court is very disturbed, the district court, right? It's very disturbed. The court agrees with you, I would say. The court agrees with you. But the court thinks – but I don't think – you argue that the court didn't think it had the power to do this. And I just – I can't get that from – I think the court did not think it lacked power to do it. I think the court thought I have to defer to their judgment. And while I would reach a different result, I would agree with Mr. Villeri. At the end of the day, I'm going to defer to them unless I think that they're not doing the balancing at all. That's why it requested this thing. And so it sent it back. They did the balancing. And then if you were right that the court just assumed that they were going to give a single cell, then I think the court would have done something on remand that it didn't do. It would have said, no, I wanted them to have a single cell. But it actually did quite exactly the opposite, right? It actually said – it sort of backed off the district court and said, Mr. Villeri thinks that I had basically ordered them to give him a single cell, but I did not do that. I just ordered them to give him the process that's necessary. They gave him the process. I did not order a certain result of that process. And so that was the district court's position. It's hard for me to read the district court the way you seem to be reading it, which is I should get a single cell or that I have to have a single cell. Well, the biggest issue, I believe, the district court in believing it was required to afford deference, it limited its own review. So you have the evidence that was considered at the committee hearing, which in no way supported the decision. And that was the key. And again, as the court noted in its ruling that it viewed with skepticism the prison official's decisions, because they cited it twice actually in the committee hearing that Mr. Villeri has no documented history of violence because that was one of the main – violence in cell. That was one of the main considerations, and the other documents relied upon truly bore no relevance on my need for single cell housing. So this is why the actual committee review of the need for single cell housing was somewhat invalid, but the court in affording deference, it said, well, you know, like you said, it backed off and said, well, we can't really do more. You can see that in – Mr. Villeri, can I interrupt? We're taking you over time, but that's not your fault. And I'm quite sure that the presiding judge will give you time for rebuttal, even though we're not only eating into, we've entirely devoured the time you sought to reserve. But my question is, if we were to rule for you, saying that the prison is required to give you in these circumstances a single cell, where does this stop and how are we as judges to figure out where this appropriately stops? Because as you know better than I do, there are a lot of dangerous prisoners, and there are a lot of prisoners that if I were the prison warden, I would love to put them in a single cell in order to protect the others. You're asking us to second-guess the prison in terms of the amount of danger, in your case, to yourself and to others. We're not very well equipped to do this, so how can we arrive at a line where we're confident that this is a legal question and we can tell the prison what it has to do? Well, specifically, I believe because this is such a fact-intensive matter, similar to the Edmo v. Corison, where a transgender inmate was entitled to the gender-confirming surgery for their condition, my argument isn't that all inmates with PTSD deserve single-cell housing. However, if prison officials refuse to acknowledge the evidence showing a specific serious medical need that housing particularly is medically necessary as a form of treatment, then they should not be entitled to deference. Because, again, it does go back to being a medical care decision, as opposed to solely a condition of confinement. Even if this were the hybrid-type issue identified in Chess v. Dovey, again, this isn't for all prisoners. Not all prisoners with PTSD would need single-cell housing. Some would need double-cell housing because they would need to have inmates around them. However, this fact-intensive question, that's why the McCall report cited in the excerpts of records is so important. Because therein, Dr. McCall specifically outlines the psychological harm caused. So, Mr. Villeri, I think you're right. These are fact-intensive questions. I don't know that the prison will disagree with you about that. The difficulty you've got is you're sitting in front of us in appellate court, and it seems like you understand the court system and how it works pretty well. You're at the level where we don't feel like we get to decide facts at this level, right? And you've already got a prison who's looked at all your facts. They say they've looked at all your facts. The judge wasn't sure, so he said, take another look. And they looked again, and they've reached a conclusion based on it. They've sort of balanced all the facts. And then you've got a district court, which is better at the facts than we are. And it's said I'm not going to impose my view on. So it's tough for us. I mean, even if we agreed with you, even if we were to dig in and look at the facts and reach the same conclusion as the district court seems to have reached in its own judgment, I mean, that's not something we usually do. We fix legal mistakes. And you've done a good job of presenting this in a legal fashion. You know, they're not deferring to me, or they shouldn't be deferring at all. I don't think I agree with you that they're not supposed to be deferring for the reasons of our – you've done a good job, but I don't think if it's a very legally intensive question, that actually cuts against you getting relief from us, right? The more legally intensive your question is, the less likely you are to get – I'm sorry, the more factually intense your question is, the less likely you are to get relief from an appellate court. Absolutely. However, when we focus on strictly the legal question, specifically is there a plausible connection between the prison official's medical care decision and the security concerns, there's no plausible connection. And that does go back to the facts and to, as I noted in there, the most important particular fact is the evidence of significant in-cell altercation, significant in-cell violence, and the psychological trauma and psychological emotional distress caused by this housing that prison officials have ignored. Not to disparage prison officials, however, when looking at their decision-making process, by that specific saying, there's no history of violence. No, despite – So, Mr. – we've kind of taken you away over time, and I think – I'll ask my colleague, but I think we kind of understand your arguments. One is that there should not be, as a legal matter, there should not be deference in this context, is your one argument, and I think we understand that. And the other is that it's just irrational, that they're just not being rational in how they're balancing these facts, it seems to be your other argument, that the prison is just not, like, properly balancing these, even if they were to get deference, they're just not – there's no good reason that they can really give for not giving you. And is that – I think those are your two sort of legal arguments that are presented to us. Is that correct? It's unjustified, absolutely, and thoroughly, that under the PLRA, under the need, narrowness, and truesomeness, that provision actually requires the court to correct the harm it identified. That's a very particular aspect of the PLRA, under 3626A2, I believe. The need – if the court identifies and rules specifically that I am at substantial harm and risk of psychological and physical harm due to being double-celled, and then when that least intrusive measures that are ordered fail to correct that harm, it requires the court to, you know, impose further relief. And that's the most important thing. Brown v. Plata, despite the requirement for deference in Bell v. Wolffish and that line of cases, the court in the Eighth Amendment medical delivery difference context – I think we understand your argument on that one pretty well, too. You did a very good job of briefing it. But I'll ask my colleagues to make sure if they have any more questions. And we will give you – if we don't, we'll give you time for rebuttal after the questions. Thank you, Your Honor. No more questions. So we'll go ahead and hear from the California Department of Corrections. May it please the Court. I am Deputy Attorney General Martha Ehlenbach, and I represent the defendants' appellees. The district court appropriately declined to modify its original injunction because Mr. Villory did not present new facts warranting more intrusive relief than what the court originally found was appropriate. Prison officials complied with the district court's original order by performing a housing review, and mental health professionals agreed with custody staff that single-cell housing was not warranted for Villory. The court found that Mr. Villory simply did not make the showing required to justify modification, and there's nothing illogical or implausible about its conclusion. I'd just like to make a few additional points. This court's review is very limited here because Mr. Villory did not appeal from the order granting his motion for a preliminary injunction in part. And regarding deference, the district court did not make a finding that a particular medical approach was correct. Counsel, give me the timing on this. So the district court's order was issued when? The original injunction was issued March 25th, 2019, I believe. March of 2019? Okay. And so he had how many days? 30 days? Yes, Your Honor. His time would have expired in April? Yes, Your Honor. And when did he file the motion to modify? The motion to modify was filed in May, May 14th. In May. But the housing review had already taken place within that 30 days. You're saying that we cannot, your theory is that we cannot review the underlying order because he didn't appeal it in April of 2019, even though you hadn't complied with, at that point you hadn't complied with the court's order. You had no idea how it was going to turn out. Actually, Mr. Villory would have known how it was going to turn out. The housing review took place less than 20 days after the original preliminary injunction motion was decided. So if Mr. Villory had wanted to appeal based on the housing review, he could have done so within the 30 days. He also didn't appeal until after 2021, much later, when the order denied his second motion for reconsideration, or when the court denied his second motion. So, again, the fact that he filed two. But just to be clear, assuming that it was proper for him to appeal the denial of his motion to modify the original PI, assuming that that was a, I think your argument is that that really wasn't proper, but assuming that that was proper, then he did seek a motion for reconsideration within time so that now this appeal, and then he appealed timely from the motion for reconsideration. You don't deny that, right? You don't dispute that? Yes. If the court considers his original motion to modify as a Rule 54 motion, then this court has jurisdiction to review that motion to modify. But it still can't. It has the jurisdiction for the motion to modify and the motion for reconsideration, but not the original PI. And you're disputing, and it seems like the big dispute between the two of you is how you characterize that motion to modify, whether or not it was just a motion, it itself was a motion for reconsideration or whether it was something else. Correct. But in terms of the appropriateness of modification, regardless of how this court construes that motion, the question is still whether Villery showed new facts or changed circumstances. And the district court was correct in finding that he didn't. He largely relied on the same evidence that he'd already presented to the court. And, again, the court found that the Department of Corrections had complied with its order requiring a housing review. So, counsel, what are the prison's security concerns and where were those concerns expressed in response to the PI? There's a declaration from a captain in the excerpts of record at page 45 and several surrounding pages where they discuss the housing review process and how security concerns are evaluated. And then there's also a declaration from a prisoner. What are the security concerns? The concerns are just in general what is evaluated when there is a question of a particular inmate's housing. Does the inmate have a pattern of violence? Have there been significant in-cell violent incidents? But does the state have any security concerns in whether Mr. Villery is assigned to a single cell? Well, in this case, the state found that Mr. Villery could be assigned to live with cellmates without particular security concerns. Right, but does the state have security concerns if he were to be assigned? If the district court had said, you've got to give him a single cell, would the state have any security concerns with that? Well, there was actually a concern expressed by the prison psychologist, Dr. Gordon, regarding issues of isolation with persons with post-traumatic stress disorder, and that's in the record at pages 48 and 49. I think what I'm really going to, I won't hide the ball any longer, was Judge Fletcher's question to Mr. Villery, and that is, does the prison have concerns that if we were to order Mr. Villery housed in a single cell, this would encourage misbehavior by other inmates in order to obtain single cell treatment? I gather that single cell is regarded as very favorable housing by many inmates. I would characterize the concern more as an operational concern, that the prison be afforded the appropriate deference and acknowledge that the custody officials are the ones who have the expertise to make these sorts of housing decisions given space, given other factors, given their knowledge of a particular inmate's enemy concerns, all of those things to determine where an inmate is housed in a particular cell, in a particular institution, and on a particular yard. And regardless... Let me ask a version of Judge Bybee's question. I can understand why a court, whether trial court or a court of appeals, should give considerable deference to the prison when it's instituting measures in order to increase the security or safety within the prison. What about measures that actually might, that are asked for, that would increase the safety but the prison declines to adopt those measures? Do we owe the same level of deference to the prison? Whereas here, I think the measure that Mr. Villery is asking the prison officials is actually to increase the safety and security within the prison, and the prison's declining to do so. Do we owe the prison the same level of deference when they're not protecting the safety of the prison? Your Honor, does afford deference in general to a prison's and prison officials' determination regarding whether a particular decision would increase or decrease the level of security? But that deference would... I think the deference you're asking for is really what I think you called operational, deference to the operation of the prison, rather than deference to a decision by the prison designed to increase security. Am I stating that accurately? I believe it's both, Your Honor. Both. Why is it in order to increase the security of the prison? That part I don't get. I mean, Mr. Villery has said, and there's a fair amount of evidence in the record to back him up on this one, that when he's double-celled, there is some danger both to Mr. Villery and to his cellmate. And if you put him in a single cell, that danger evaporates. Your Honor, that's why the district court ordered officials to consider that evidence and perform this housing review with input from mental health professionals. And when those mental health professionals agreed with custody staff, that single-cell housing was unwarranted. No, I understand. I understand that that's what the decision was. But the decision wasn't really based on it's safer for everybody to have him in a double cell. The decision was based on operational concerns. The prison also considered any security concerns. In Captain Livingston's declaration, it considered whether Mr. Villery could safely house with other individuals. No, I understand that. But you're not quite taking my point, but that's all right. Well, let me see if I can, because you can tell we're all very interested in this. So let me see if I can characterize this slightly differently. Does the prison only get deference when it's making a decision that would actually, that's a security and safety-related concern, when it's making a decision that, if it makes that decision, will actually increase safety and security? Or does the prison also get deference when there's a proposal for the prison to do something that would, in theory, increase safety and security, and the prison decides not to do it because it decides that that's not necessary? I'll give you an example. So you have a prisoner that says, I want to get a stake every day, and if I don't, I'm going to hurt some people, right? Now, if you give the prisoner the stake, and the prisoner is true to his or her word, like it will increase the safety and security because some people won't get hurt, right? But the prison decides it's not necessary to give this prisoner a stake to keep this prisoner from hurting some people. It seems to me like there's safety and security all wrapped up in all those decisions. But Mr. Villery is very clever. He's characterized it as, he's sort of gotten the court to focus on just the question of whether or not, if you do what I'm asking, it will increase security, and so it will, in theory, increase security. It won't hurt security to do what I'm asking, so it sort of kind of becomes a one-way ratchet. And I think one way you could characterize Judge Fletcher's question is, does the State only get deference when it's doing something that will purport to increase security if it does it, or does it also get deference when it declines to do something because it doesn't think the security and safety gains are worth the cost of doing it? I would recharacterize it slightly, Your Honor, because I think in that circumstance, a court could certainly find that even giving deference under a particular scenario that we don't have here, perhaps the prison did not, there were not enough facts to support its conclusion, or there's something simply implausible about what it said. But that's just not what we have. So that's where I think you're getting to, and that's really more of a question of a factual question for the district court rather than a legal question of deference. Let me try to understand, counsel, what you're saying. You say it's implausible. You're saying that's not what happened here. The prison didn't sort of weigh things and decide that the safety and security concerns weren't necessary. You're saying that didn't happen? No, I'm not saying the prison didn't weigh things. I'm saying this wasn't a situation where the court found that the prison's weighing was inadequate. The court made a factual finding. I'm sorry. I'm having trouble hearing. This wasn't a situation where the court found? That the prison's evidence or its weighing of, for example, the McCall report was inadequate. That's not what it found. I think in the first instance, the one that's not before us, the court wasn't sure that the prison had actually weighed everything. So in order to proceed, in order to weigh basically, in order that the prison take this seriously, have a meeting, do all this stuff. But still, I think I want to, at the end of the day, you agree, would you agree that, like, there might be a situation where the safety and security concerns were such that it would merit somebody getting their own cell? I'm thinking of Silence of the Lambs here, right? Certainly. You know, the guy with the face thing on. You know what I'm talking about, right? So, you know, let's say that's going on. I could imagine, whew, this guy's going to kill his cellmate, like, you know, every time. So we should probably do that. Okay. So would you agree that there could be a situation in theory, right? Certainly. And that would be a case where they were weighing the safety and security and going, wow, this guy needs a cell. And I think the question is, what about when they do the same thing and they come to the opposite conclusion? Do they get no deference? Does the prison get no deference just because they reach the opposite conclusion that it wasn't necessary for safety and security to give this person? They get deference either way, Your Honor. Exactly. I think that's the right answer. That's what I was hoping to hear from you. It seems absurd that they wouldn't. Yeah. Okay. Yes, Your Honor. And my question wasn't quite that question as to whether they get deference in one direction and no deference in the other. My question is, is there a different level of deference? No, Your Honor. And particularly here when we have this type of mixed medical and custody operational question. This Court's well-established precedent provides a measure of deference. The Fryhat case that we cite on page 26 of our brief is a good example of deference in the medical context where this Court struck down an injunction that imposed a wide range of obligations on federal officials in the management of COVID-19 in detention facilities. And that was a question of deliberate indifference. And the Court nevertheless found that the executive must have some discretion to make those types of management decisions. So here, when defendants presented evidence that the housing decision at issue also involved this type of medical and custody concern, and when the prison had considered both of those concerns and everybody was on the same page. So we've taken you over time, and I want to make sure my colleagues, if they have any follow-up questions. I have one last thing that sort of is in the background here, and probably we've all thought about it. It's a little bit of an odd situation because a prisoner in Mr. Villery's situation, there is what you might call the perverse incentive. I don't know what you'd call it in economic terms. But they're sort of in a, in some sense, they want to make true on their threat, right, because they want to prove that, you know, it's been seven years, as I understand it, since 2015, since this all kind of started, if I remember right from reading the record. Am I right in that? It's been since 2015 that Mr. Villery has been asking, has sort of in different ways been asking for this? It's been a number of years, yes. And so in some ways, and I don't see that you made this argument, but you could say it's been seven years and he hasn't really, you know, the horrible thing hasn't materialized either for Mr. Villery or for others. But in some ways, Mr. Villery is somehow encouraged, and other inmates would be too, that make these claims to actually create problems in order to, you know, whether their PTSD and their actual mental condition, mental health condition, would actually cause problems just to create the problems that they want in single-cell housing. So what do we do with that? Like, you know, I can imagine as a prison official, you're put in an awkward position because if somebody says, if you don't give me single-cell housing, bad things are going to happen, they're sort of, and the court says, well, bad things haven't happened yet, then they're sort of encouraged to make bad things happen. And that puts the prison in a tough situation. What do we do with that? Like, is that a reason to further defer, or is that a, I don't know. I'm trying to figure out. I just think this is the problem for the prison, it seems like. Yes, Your Honor. Certainly, if prison officials have a particular concern in that arena, mental health staff and custody staff can take steps, such as placing Mr. Villery in protective housing or doing different things. But again, what was found here was simply not that. Any other questions? All right. Well, Mr. Villery, we'll put two more minutes on the clock for you, and I think I won't ask you any questions. I want you to be able to just respond in your own words too, but I can't guarantee for my colleagues here. Thank you, Your Honors. Thank you, Your Honor. First, with respect to the Freyhut decision cited by opposing counsel, that decision, the reason why indifference was afforded was because, in that case, the plaintiffs were requesting, essentially, that all INS facilities comply with these specific procedures, and it was found to be highly overbroad because they were asking for it on behalf of every INS detainee in the United States. And that was a big concern with the court, why they chose to defer to operation of the facilities. That's quite an opposite of the case at Barr, where it's a single prisoner on very fact-specific circumstances requesting a particular housing. It doesn't interfere with the prison's operations because, for instance, there are several medical-type decisions that impact housing that are made based solely on the medical condition. For instance, an inmate is afforded a lower bunk housing because they have orthopedic issues. Now, custody couldn't come in and say, well, we have a safety and security concern, so he has to live on a top bunk, because that would be clear deliberate indifference to the inmate. However, it's a difference between where an inmate is housed and how the inmate is housed. In my case, I believe this is a question of how I were to be housed because, say, they say Mr. Billy requires single-cell housing. Well, this still leaves substantial decision-making for the prison to say, OK, single-cell, but we can put him here, on this facility, in that prison, in this housing unit. So they're still deferring to prison officials about where to house him, but the medical aspect of it and how that individual is housed is the key question. And it's not just, for instance, the court focused on reverse incentives to have an inmate purposely engage in violence or whatnot to compel prison officials to do something. However, it's also the psychological harm, as this court held in Edmo, for instance, that psychological stress, trauma, sleep deprivation, those alone compel the decision to house me in a single cell because that suffering is just not something we... It should be evolving standards of decency in a civilized society. We wouldn't afford veterans, for instance, you wouldn't send them back to the war zone if they were suffering from PTSD. That's the best analogy that I can find because this is studied in prisoners, despite the fact that Dr. McCall found that over 50% of prisoners suffer from severe to moderate PTSD symptoms. Mr. Villeri, we'll let you go about a minute over your 2 minutes, but thank you for... You've done, I think, an excellent job of presenting your case to the court, both in the writings and in your argument today. And if my colleagues have no further questions, I think we'll end this case submitted. All right, well, thank you, Mr. Villeri. Thank you, Your Honor. And thank you to the Government's Council. And this case is now submitted.
judges: FLETCHER, BYBEE, VANDYKE